No. 24-3185

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

UNITED STATE OF AMERICA,

Plaintiff-Appellee,

v.

THEODORE E. ESSENFELD,

Defendant-Appellant.

_____

Appeal from the
United States District Court
for the Southern District of California
Honorable Robert S. Huie
District Court Case No. 23-CR-0177-RSH

_____

APPELLANT'S FRAP 9(a) MEMORANDUM
OF FACTS AND LAW

_____

Kerry L. Armstrong
Law Offices of Kerry L. Armstrong, APLC
750 B Street, Suite 2840
San Diego, CA  92101
(619) 234-2300
notguilty01@outlook.com

Attorney for Mr. Theodore Essenfeld

INTRODUCTION

Mr. Essenfeld is a captain in the United States Navy. He has been charged, via a superceding indictment filed on August 10, 2023, with violating two counts. Count one alleges that Mr. Essenfeld violated 18 U.S.C. section 2261A, subdivision (2)(B), as well as section 2261, subdivision (b)(5) (cyberstalking). Count two alleges that Mr. Essenfeld violated 18 U.S.C. section 1028, subdivision (a)(7), as well as section 1028, subdivision (b)(2)(B) (identity theft). Mr. Essenfeld's jury trial is set to begin on June 10, 2024, before the Honorable Robert S. Huie.

Mr. Essenfeld posted bond in 2023 not long after his arrest, and he was placed on pretrial release until Judge Huie remanded him on May 17, 2024, at an order-to-show-cause hearing. Until the order to show cause hearing in May 2024, Mr. Essenfeld had never been accused of any of his pretrial release. In fact, Pretrial Services still has never filed any allegations against him alleging that he has violated any of his pretrial release conditions.

The reasons that led the court to remand Mr. Essenfeld began on May 6, 2024, when the government filed a seventeen-page "Notice of Rule 404(b) Evidence" with the court. (ECF 57.) In that notice, the government alleged that Mr. Essenfeld appeared to have created several "fan pages" in August 2023 using the alleged victim's name, date of birth, biographical information, etc. These "fan

2

pages" were then posted on Facebook, Instagram, YouTube, and Wikimedia in August 2023. The pages contained photos of the complaining witness at various events and places, including photos that the complaining witness alleged were embarrassing to her and that also formed the basis of the cyberstalking charge against Mr. Essenfeld in the superceding indictment. The pages seemed to be from a "fan" prospective setting forth facts about the alleged victim's life.

In the government's motion, it was alleged that the alleged victim found the first "fan page" in January 2024. She then reported it to the Naval Criminal Investigative Service (NCIS), and an investigation began to determine who had posted what ended up to be the several fan pages as described above.

On May 9, 2024, the district judge issued an order to show cause for Mr. Essenfeld as to why his bond should not be revoked based on the May 6, 2024, filing by the government regarding the allegations as set forth in the Federal Rules of Evidence section 404(b), notice. (ECF 61.) The order to show cause hearing was set for the following day, May 10, 2024, to coincide with the *motions in-limine* hearing that was already scheduled for that date.

At the hearing on May 10, 2024, the district judge heard brief arguments from each side regarding the evidence the government argued tended to show that Mr. Essenfeld might have posted the "fan pages" in August 2023. The defense requested that the order to show cause hearing be held in abeyance until the jury

3

trial since the new allegations against Mr. Essenfeld also formed the basis for the government's section 404(b), request. In other words, it would not be fair for Mr. Essenfeld to have to defend against the section 404(b) allegations in an order to show cause hearing when he might also have to defend against the same allegations a few weeks later at his jury trial. The district judge then continued the order to show cause hearing for one week (to May 17, 2024). The *motions in-limine* hearing was also continued to that date based on defense counsel suffering from bronchitis.

On May 17, 2024, the district judge overruled the defense's request to hold the order to show cause hearing in abeyance until the trial, ruling that the evidentiary hearing must occur that day. Through defense counsel, Mr. Essenfeld denied the allegation that he had created the August 2023 "fan pages." The evidentiary hearing then commenced, with the government and defense each arguing what the circumstantial evidence gathered to date meant to each side and how it should be interpreted. At the end of that hearing, the district judge first ruled that Mr. Essenfeld had violated the terms of his pretrial release. The defense then argued that the proper remedy for the violation would be to detain Mr. Essenfeld at home and require him to wear a GPS ankle bracelet both until and throughout the jury trial.

4

The district judge then analyzed the 18 U.S.C. section 3142, subdivision (g), factors regarding detention, and he ruled that Mr. Essenfeld was both a danger to the community and a flight risk. After weighing the factors, the district judge ordered Mr. Essenfeld to be remanded to the custody of the U.S. Marshals. (ECF 70.)

The defense now requests that this Court remand Mr. Essenfeld's case to the district court with instructions that Mr. Essenfeld be placed on home detention with a GPS ankle bracelet that must remain in place throughout his jury trial.

## STATEMENT OF JURISDICTION

Mr. Essenfeld appeals the district judge's order remanding him into custody because he violated his pretrial release conditions that he not use or access any computer without monitoring software installed unless approved in advance by Pretrial Services, that he not open any new social media accounts, and that he must not violate any local, state, or federal law while on pretrial release (referencing a July 22, 2022, military protective order that forbade him from harassing the alleged victim. (*See* 18 U.S.C. section 3145, subdivision (c); Fed. R. App. P. 9(a).)

The district court had original jurisdiction for this offense under 18 U.S.C.

section 3231.

18 U.S.C. section 3145, subdivision (c), expressly provides for a direct appeal of a detention order. (*See also Stack v. Boyle* (1951) 342 U.S. 1, 4.)

The district judge entered an order remanding Mr. Essenfeld on May 17, 2024. Mr. Essenfeld then timely filed a Notice of Appeal on that same day. (*See* Fed. R. App. P. 4(b)(1)(A)(i) (appeal timely if filed within fourteen days of entry of judgement).

## Bail Status

Mr. Essenfeld is in the custody of the United States Marshals Service because he was ordered remanded by the district court judge. He has no scheduled release date since his case is not yet final.

## Issues for Review

1. Did the district court err by holding an order to show cause hearing for Mr. Essenfeld twenty-four days before trial based on circumstantial allegations filed by the government in a Federal Rules of Evidence section 404(b) notice and not holding the hearing in abeyance?

2. Even if the district court did not err by ruling that Mr. Essenfeld had violated his pretrial release conditions, did the district court err by remanding him into custody based on those violations?

6

**ARGUMENT**

**A. The District Court Erred by not Holding the Order to Show Cause Hearing in Abeyance Until Mr. Essenfeld's Jury Trial:**

The district court should have held the order to show cause hearing in abeyance until after Mr. Essenfeld's jury trial for several reasons. First, the defense was placed in an untenable position because the nature of the allegations against Mr. Essenfeld in the order to show cause hearing were almost exactly the same as the charges against him in the superceding indictment. Because the government had filed the allegations in a Federal Rules of Evidence section 404(b) notice, and because the district judge had not yet ruled on those 404(b) issues, it placed Mr. Essenfeld in a position that he either had to testify in his order to show cause hearing and subject himself to cross-examination about issues that very likely would come into play at his upcoming trial, or he was otherwise forced to remain silent at his order to show cause hearing and allow the government to make allegations against him that were very difficult to defend unless he testified. Based on his counsel's advice, Mr. Essenfeld decided not to testify at his order to show cause hearing.

While the decision not to testify on May 17, 2024, was Mr. Essenfeld's to make, he was, as the saying goes, placed between a rock and a hard place. Discovery regarding the 404(b) allegations was still coming in (at a very rapid rate), and the defense had still not been given any records from Mr. Essenfeld's cellular phone from August 2023 on. This evidence could have tended to exonerate him regarding the 404(b) allegations, and that is one reason the defense requested the district court to hold the hearing in abeyance until the trial. Based on

7

the facts, it was unfair for Mr. Essenfeld to have to make a choice to testify or not about the 404(b) allegations in an order to show cause hearing just twenty-four days prior to his trial.

Another reason the district court should have held the order to show cause hearing in abeyance until the trial was that only some slight, tenuous, circumstantial evidence tied Mr. Essenfeld to the creation of the "fan pages" created in August 2023.

The main piece of this circumstantial evidence against Mr. Essenfeld was that the prepaid cell phone used to create the "fan pages" had an IP address that connected to the WiFi systems of three restaurants/coffee shops in an area near his house in Chula Vista, California (a Starbucks, a McDonald's, and a taco shop)[1]. However, the government had no evidence whatsoever that Mr. Essenfeld had used the WiFi in those restaurants at any time in his life, including using the WiFi for a prepaid cellular phone used to create the "fan pages." Apparently, the government never even tried to get video from the restaurants' surveillance systems in order to see if Mr. Essenfeld actually visited each restaurant on the dates in question. Also, as stated above, at the time of the order to show cause hearing, no cell phone records of Mr. Essenfeld's personal cell phone had been received by the government to possibly show his whereabouts on the dates that the WiFi of the three restaurants were accessed by the prepaid cell phone used by the creator of the "fan pages."

Another piece of tenuous circumstantial evidence set forth by the government at the order to show cause hearing was that the alleged victim had

---

[1] The government alleges that all three restaurants are within approximately .7- to .9-tenths of a mile from Mr. Essenfeld's residence.

8

apparently told NCIS that some of the photos used in the "fan pages" were photos that only Mr. Essenfeld possessed. However, at the time of the order to show cause hearing, the defense had not been given any actual evidence to back up that claim, including not being given even an NCIS report documenting which photos the alleged victim was arguing were only possessed by Mr. Essenfeld.

Finally, a third piece of tenuous circumstantial evidence set forth by the government at the order to show cause hearing was that one of the photos of the alleged victim and posted on the Wikimedia and Instagram "fan pages" depicted her at a local venue. Metadata that the government received apparently showed that the photo was taken on December 6, 2019, with a Samsung cell phone, and the model was a SM-G960U. That is the same model of phone that Mr. Essenfeld possessed when he was arrested for the underlying charges in this case. NCIS showed the photo to the alleged victim in 2024, and she did not recognize it. However, she did state that the setting was one where Mr. Essenfeld was present and where he took photos of her that particular day.

This piece of circumstantial evidence is something that Mr. Essenfeld wanted to testify about at his order to show cause hearing. However, as stated above, he felt as if it was too dangerous to do so with his trial looming only a few weeks away.

Even if the district judge believed that Mr. Essenfeld was the one who took the photo of the alleged victim at an event in December 2019, that in no way whatsoever shows that Mr. Essenfeld was the person who created the "fan pages" in August 2023. Almost four years had passed between the taking of that particular photo and the apparent posting of it on Wikimedia and Instagram. There

9

was zero evidence shown, or even argument made, tending to show that Mr. Essenfeld was the sole possessor of that photo for that period of time.

The defense concedes that each piece of evidence listed above, as well as the remaining circumstantial set forth in the government's Rule 404(b) notice, must be looked at together and not just separately in a vacuum. However, even when taken altogether, the totality of the evidence did not equate to clear and convincing evidence that Mr. Essenfeld had violated his pretrial release conditions. In fact, the sum total of the evidence likely did not even rise to a preponderance of the evidence standard. The allegations did cast some suspicion on Mr. Essenfeld, but not enough to find that he had violated any of his pretrial release conditions.

**B. The District Court Erred by Remanding Mr. Essenfeld into Custody Instead of Ordering House Arrest and GPS Monitoring for Him:**

After the district judge found Mr. Essenfeld to be in violation of his pretrial release, he weighed the factors set forth in 18 U.S.C. section 3142(g) to determine whether Mr. Essenfeld should be remanded into custody or whether an alternative was appropriate. The defense again requested that the court order home detention for Mr. Essenfeld, including GPS monitoring; however, that request was denied.

Section 3142(g) states:

> (g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of

> the person as required and the safety of any other person and the community, take into account the available information concerning–
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

The district judge first commented that he found Mr. Essenfeld's violation to be a "serious violation" and not a technical one. The court lamented that the "fan

pages" were still up, and therefore the violation was ongoing. (Defense counsel had also commented during the hearing that he had no idea why the sites were still up so long after NCIS began to investigate them. That question was never answered by the government at the hearing.) Needless to say, it would seem that NCIS could have requested that each social media company take the sites down long ago.

**1. Nature and Circumstances of the Offenses Charged:**

Mr. Essenfeld is charged with both cyberstalking and identify theft. Neither crime involved any type of force or violence whatsoever. In fact, there are no allegations that Mr. Essenfeld ever communicated with his accuser in an unwanted way, that he ever followed her around or surveilled her, or that he ever threatened her in any way whatsoever. Therefore, this factor weighs heavily in Mr. Essenfeld's favor.

The district judge found that this factor weighed in favor of detention for Mr. Essenfeld because "it's an offense [apparently the cyberstalking count] that does involve harm to others, both in the abstract and in Mr. Essenfeld's case." [R.T. p. 56.] While it may arguably be true that harm was caused to the complaining witness in this case, there was no physical harm whatsoever. And even if one believes that Mr. Essenfeld cyberstalked his accuser, he did not communicate with her in an unwanted way whatsoever. This is not a typical cyberstalking case in any way, shape, or form.

**2. Weight of the Evidence Against the Person:**

The district judge found that the weight of the evidence against Mr. Essenfeld regarding the underlying charges is "very strong." [R.T. 56.] In some ways, that is true. That is, the defense in this case has never argued that Mr. Essenfeld did not post the fake Facebook and LinkedIn pages depicting the complaining witness. Rather, as the defense argued in its previously-filed motion to dismiss based on First Amendment grounds, the defense is that Mr. Essenfeld's conduct does not constitute a crime.

**3.  History and Characteristics of the Person:**

As the defense noted in both order to show cause hearings, Mr. Essenfeld is a captain in the United States Navy. He has been in the Navy for thirty-four years. While the filing of this case put a stop to any promotions he might have received in the Navy, he continues to serve. In fact, not only does he continue to serve, but the Navy has not even placed Mr. Essenfeld on desk duty; rather, his current duties include the preparation of thirty-two U.S. warships to make sure they are ready for war if called upon. Mr. Essenfeld has had an impeccable career in the Navy, and he has served his country well. He is a hard worker and a fearless leader.

Additionally, as the defense pointed out at both order to show cause hearings, Mr. Essenfeld has two sons (one of whom is an adult and one of whom is a minor). He is actively involved in both of their lives, including having fifty/fifty custody of his underage son. And even on the weeks when Mr. Essenfeld does not have visitation with his minor son, he is still responsible for taking him to several after-school events (including sports practices). It has been an extra burden on Mr. Essenfeld's ex-wife to take over those duties since Mr. Essenfeld was remanded into custody on May 17, 2024.

Both of Mr. Essenfeld's sons also depend on him for financial support. Mr. Essenfeld pays child support to his sons' mother, but that is in danger of stopping soon once the Navy almost assuredly finds that Mr. Essenfeld is absent without leave (AWOL).

As for Mr. Essenfeld's conduct in the community, he has no prior convictions whatsoever (or even arrests). He has been a pillar of his community everywhere he has lived. He has zero substance abuse issues, and he has never consumed illegal drugs. Mr. Essenfeld has a very serious girlfriend at the moment, and she is fully in support of him. He also has a perfect court attendance record, always arriving to court early.

**4. Danger to the Alleged Victim or to any Person in the Community:**

There is no danger whatsoever to the alleged victim or to anyone in the community if Mr. Essenfeld is released from custody and placed back on pretrial release pending his upcoming trial. As stated above, it is problematic that the "fan pages" are still online and accessible for anyone to see. However, common sense tells us that NCIS and/or the government should be able to work with the social media companies at issue in order to have the sites taken down. This is surely not the first case where an unwanted fake site was created; therefore, social media companies must have a procedure in place to deal with such events. We all know that when a mass shooter posts his or her manifesto or similar ranting online, the social media company it is posted on immediately takes it down upon being noticed of it.

It should be noted that when Pretrial Services was asked at Mr. Essenfeld's order to show cause hearing if it had anything to add, the officer informed the court

14

that Mr. Essenfeld had sustained no violations whatsoever while on pretrial release. That obviously means that Mr. Essenfeld has not been accused of contacting the alleged victim whatsoever since he was placed on pretrial release. Software tracking has been placed on his cell phone and laptop, and he has had no violations whatsoever.

Whatever concerns the district judge may have had regarding Mr. Essenfeld supposedly creating the "fan pages" could have easily been alleviated by ordering him to be placed on home detention with a GPS monitor on his ankle pending trial. As defense counsel argued at the hearing, such an order would allow Pretrial Services to see if Mr. Essenfeld went to a store or restaurant to supposedly create or monitor any pages relating to the alleged victim.

In conclusion, even if the district judge was correct in determining that Mr. Essenfeld was the person who created the "fan pages" in August 2023, the district judge erred by remanding him into custody pending his upcoming trial date. The section 3142(g) factors overwhelmingly favor leaving Mr. Essenfeld on pretrial release (with the additional mandates of house arrest and GPS monitoring).

The defense is being flooded with new discovery here on the verge of trial, most of it concerning the allegations set forth in the government's Rule 404(b) notice. The defense needs for Mr. Essenfeld to be able to adequately assist in his defense, and the only way for that to adequately occur is for him to assist in his attorney's office and not from a jail cell. The defense urges this Court to issue an order mandating that the district court place Mr. Essenfeld back on pretrial release with home detention and GPS monitoring.

## **The Standard of Review is Independent and De Novo**

This Court makes "an independent examination of the facts, the findings, and the record to determine whether [a] pretrial detention order is consistent with [a person's] constitutional and statutory rights." (*United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).) "Only in rare cases should release be denied, and doubts regarding the priority of release are to be resolved in favor of the defendant." (*Santos-Flores*, 794 F.3d at 1909 (discussing *Motamedi*, 767 F.2d at 1405).

## CONCLUSION

This Court should reverse the detention order with instructions that Mr. Essenfeld be released on the proposed conditions.

Dated: May 31, 2024

Respectfully submitted,

*s/Kerry L. Armstrong*

Kerry L. Armstrong
Law Offices of Kerry L. Armstrong, APLC
750 B Street, Suite 2840
San Diego, California 92101
notguilty01@outlook.com
Attorney for Theodore Essenfeld
_____