TARA K. MCGRATH
United States Attorney
SABRINA L. FEVE
California Bar No. 226590
MICHAEL A. DESHONG
California Bar No. 301041
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6784/9290
Fax: (619) 546-0631
Email: Sabrina.Feve@usdoj.gov
Email: Michael.Deshong@usdoj.gov

Attorneys for Plaintiff
United States of America

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THEORDORE E. ESSENFELD, <br><br> Defendant. | Case No.: 23-cr-0177-RSH <br><br> **UNITED STATES' NOTICE OF RULE 404(b) EVIDENCE** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Tara K. McGrath, United States Attorney, and Assistant United States Attorneys Sabrina L. Fève and Michael A. Deshong, and hereby files its above-referenced Notice, based on the files and records in this case. As this Notice contains victim-sensitive information, a redacted version will be publicly filed and an unredacted version will be filed under seal. The attached exhibits, which cannot be usefully redacted, will only be filed under seal.

//

# I.
# INTRODUCTION

Defendant Theodore Essenfeld is currently charged with cyberstalking in violation of 18 U.S.C. § 2261A, and identity theft in violation of 18 U.S.C. § 1028(a)(7). The charged conduct alleges that, between November 2020 and May 2022, Essenfeld used Victim A's name, date of birth, image, and biographical information to impersonate and humiliate her on Facebook and LinkedIn, and to register email accounts and a burner cell in her name to conceal his involvement. Trial is set for June 10, 2024. Essenfeld is expected to testify.

Pursuant to Federal Rule of Evidence 404(b), the United States hereby provides notice of its intent to admit and use on cross-examination evidence of other crimes, wrongs, or acts. In particular, during cross-examination, the United States intends to use evidence of and relating to Essenfeld's creation and use of social media accounts, between August 13, 2023 and March 27, 2024, that purported to be "fan" accounts for Victim A, but which were designed to harass and intimidate her in retaliation for his being charged with cyberstalking and identity theft. The United States also offers notice of its intent to use during defendant's cross-examination electronic communications that Essenfeld received and sent between May 2019 and September 2020 regarding his own online dating activities.

As outlined below, shortly after the grand jury returned the Superseding Indictment, Essenfeld appears to have created Google, Facebook, Instagram, Wikipedia, and ▇▇▇ "fan" accounts using Victim A's name, date of birth, likeness, and biographical information without her consent. The evidence pertaining to these accounts has recently been obtained, mostly produced, and arises from an active and ongoing investigation into the "fan" accounts. Investigators with the Naval Criminal Investigative Service (NCIS) are still awaiting the results of search warrants pertaining to these accounts. The United States will expeditiously produce any such records when they are received and reserves the right to supplement this notice with additional disclosures prior to trial.

## II.

## FACTUAL BACKGROUND

In February 2022, a civilian female ("Victim A") who lives in Colorado contacted the U.S. Army's Criminal Investigative Division to report that an imposter Facebook account bearing her name and biographical information was publicly posting erotic and embarrassing photographs of her without her consent or authorization. Victim A advised that she had previously provided some of these photos to her former boyfriend, Theodore "Ted" Essenfeld, but had not provided them to anyone else and had not posted them to any social media. She later discovered LinkedIn and Yahoo email accounts that also used her name, image, and biographical information without her consent. One of the albums in the imposter Facebook account focused on allegations that Victim A had used Match.com to communicate with other men while dating Essenfeld.

Essenfeld is an active-duty Captain in the U.S. Navy currently assigned to San Diego. On July 25, 2022, Essenfeld voluntarily spoke with NCIS agents after they advised him of his rights. During the interview, Essenfeld admitted to creating the imposter Facebook and LinkedIn accounts and to intending to hurt and embarrass Victim A. He blamed his conduct, in part, on Victim A's using Match.com while they were dating. He denied breaking the law and maintains that the First Amendment protects his conduct.

On July 26, 2022, Essenfeld signed a non-expiring Military Protective Order (MPO), akin to a Restraining Order, acknowledging that he was "restrained from assaulting, threatening, abusing, harassing, following, interfering with, or stalking" Victim A and "restraining from initiating any contact or communication with [Victim A] either directly or through a third party." The MPO clarified that "communication" included through a third party or via the internet or social media. Exhibit A (copy of the MPO).

On February 3, 2023, NCIS arrested Essenfeld for one count of federal cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B). On February 6, 2024, Magistrate Judge Michael S. Berg ordered defendant released pending trial. After Essenfeld failed to find one financially responsible adult to act as his surety, Judge Berg issued a Modified

Pretrial Release Order that permitted Essenfeld to act as his own surety. ECF 15. One of the conditions of Essenfeld's Modified Pretrial Release Order was that he was to have no contact with Victim A. To help implement this condition, Pretrial Services was authorized to conduct 4th waiver searches of Essenfeld's electronic devices up to four times per month; he was to participate in a computer monitoring program and not use or access any computer without monitoring software installed, unless approved in advance by Pretrial Services, he was ordered not to open any new social media accounts; and Pretrial Services was authorized to monitor his existing accounts. *Id.*

On August 10, 2024, after the parties were unable to resolve the case, the grand jury returned a Superseding Indictment that charged Essenfeld with cyberstalking in violation of 18 U.S.C. § 2261A, and identity theft in violation of 18 U.S.C. § 1028(a)(7). ECF 27. The Court arraigned Essenfeld on the Superseding Indictment on August 18, 2023. ECF 28. On September 26, 2023, Essenfeld substituted counsel. ECF 31.

On February 26, 2024, Essenfeld filed a motion to dismiss the Superseding Indictment based on the First Amendment. ECF 37. Essenfeld's motion referenced Victim A's interview with NCIS, which had been produced subject to a protective order. The motion identified by name and website (█████████) the organization that Victim A told NCIS was the host of a competition where she had been photographed and whose professional photographs she had bought and privately shared with Defendant. The motion also noted that Victim A had told NCIS that she "was not happy that photos of her previous military service were being shown on the fake Facebook page alongside photos of her in ████ outfits from" her dance competition and that she was "concerned" that the imposter Facebook account had posted "her hometown, current city of residence, and at one point her date of birth." ECF 37, Mot. at 3:11, 3:17-19, 4:24-5:2.

### III.
### INVESTIGATION OF THE "FAN" ACCOUNTS

To explain why the United Staes did not provide this Rule 404(b) notice earlier, the United States offers a more fulsome background of the investigation into the "fan"

accounts. To use the Rule 404(b) evidence at trial, however, the United States need only have a good faith belief that the evidence is true and accurate.

In mid-January 2024, Victim A notified NCIS that she had discovered a "████████" webpage ████████████████████████████) that featured her full name, date of birth, hometown, biographical background, and photographs of her (hereafter, the "████████ account" or "WA-1"). WA-1 included links to videos from social media accounts belonging to ████████. WA-1 was styled as a "fan" account but appeared intended to harass and humiliate Victim A. *See* Exhibit B (copy of WA-1). For example, WA-1 had a photo of Victim A in her military uniform alongside photos of her in more revealing clothing, and it disparaged her military career. Essenfeld had previously posted the photo of a young Victim A in uniform to the imposter Facebook account; this photo was not publicly available on the Internet prior to Essenfeld posting to the imposter account. Two of the other photos posted to WA-1 were the professional photographs that Victim A had privately shared with Essenfeld during their relationship. Another photo was one that Essenfeld had used to sign Victim A up for Facebook dating services when he operated the imposter Facebook account.

Defendant's February 26th motion to dismiss the Superseding Indictment added context to who created WA-1. Defendant's identification of "████████" by name in his motion highlighted a detail that was peripheral to the case and mentioned only in passing amid thousands of pages of discovery. It helped explain how the creator of WA-1 found and tagged the two videos of Victim A from 2019 that ████████ had posted to social media, which investigators had not seen in the prior imposter accounts. Similarly, WA-1 focused on three things that defendant's motion identified as particularly upsetting to Victim A: providing extensive biographical details for Victim A, demeaning Victim A's military service, and drawing attention to the pictures that Essenfeld knew Victim A was did not want publicized. This focus tracked with Essenfeld's understanding, after reviewing the discovery, that these issues particularly upset Victim A.

Additional investigation into the ▮▮▮▮ account led NCIS to identify the following related electronic communication accounts:

- A Victim A "Fan" account on YouTube (which is owned and operated by Google) (youtube.com/@▮▮▮▮).
- A Victim A "Fan" Gmail account ▮▮▮▮gmail.com).
- A Victim A "Fan" account on Facebook (Facebook ID ▮▮▮▮).
- A Victim A "Fan" account on Instagram (instagram.com▮▮▮▮).
- A Victim A "Fan" account on Wikipedia (which is owned and operated by Wikimedia) (wikimedia.org/wiki/Special:ListFiles▮▮▮▮).
- A Samsung Galaxy A03s assigned to (858) 308-6205 for which no subscriber records have yet been identified.

On March 25, 2024, NCIS obtained a § 2703(d) Order for the YouTube/Google, Facebook, Instagram, and Wikipedia accounts. NCIS then sought and obtained subscriber records from AT&T, T-Mobile, and Cox Communications for IP addresses used to access the Victim A "fan" accounts, as well as toll records for the cell phone assigned to (858) 308-6205, which appears to be a disposable pre-paid cell phone.

On April 26, 2024, NCIS obtained warrants to search the Facebook and Instagram Victim A "fan" accounts, and to collect historical cell-site records. The search warrants have been provided to defense counsel, along with the records received to date from Meta (which owns Instagram and Facebook), Google, AT&T, T-Mobile, and Cox Communications. Some of these responses were received as recently as May 2, 2024. The results of the search warrants are still pending.

The creator of the Victim A "fan" accounts devoted considerable attention to masking their identity. Despite these efforts, NCIS was able to find attribution evidence. In addition to the evidence described above, evidence connecting Essenfeld to the Victim A "fan" accounts includes the following:

- Having been charged with identity theft for impersonating Victim A in the earlier imposter accounts, these accounts, while still using Victim A's name and date of birth, are careful to describe themselves as "fan" accounts.
- Activity involving the "fan" accounts tends to cluster around developments in this case. E.g., the Superseding Indictment occurred on August 10, 2023, and the YouTube, Facebook, and Instagram Victim A "fan" accounts were created on August 13 and August 14, 2023. On September 21, 2023, around when Essenfeld retained new counsel, the Wikipedia and ███ accounts were created. Between mid-October 2023 and late February 2024, this case was quiet, and there was no discernible log-in activity to the "fan" accounts. But on February 26, 2024, Essenfeld filed his motion to dismiss and on February 28, there were logins to the Instagram and Facebook Victim A "fan" accounts and activity involving those accounts.
- One of the photos posted to the Wikimedia and Instagram accounts was of Victim A on stage at a local venue. Metadata shows that the photo was taken with a Samsung SM-G960U on December 6, 2019, and includes the latitude and longitude where the photo was taken. Essenfeld's cell phone was a Samsung SM-G960U. NCIS showed Victim A the photo. She did not recognize it, but she did recognize the setting. She identified it as the only competition of hers that Essenfeld attended, where she recalled him sitting in the audience taking pictures of her on stage. The latitude and longitude coordinates in the metadata match the location that Victim A identified as the competition venue.
- The IP address used to create the YouTube Victim A "fan" account and the Facebook Victim A "fan" accounts on August 13, 2023 (PDT) was assigned to Cotija Taco Shop, 872 Eastlake Parkway, Chula Vista, CA. This shop is .7 miles from Essenfeld's home, 724 San Juan Place, Chula Vista, CA.

- The IP address used to create the Instagram Victim A "fan" account on August 14, 2023 (PDT) was assigned to a Starbucks, 2295 Otay Lakes Rd., Chula Vista, CA. This store is .9 miles from Essenfeld's home. Starbucks offers public Wi-Fi access within its stores.
- The IP address used to log in to the Instagram Victim A "fan" account on September 21, 2023 (PDT) was assigned to a Starbucks, 2295 Otay Lakes Rd., Chula Vista, CA, which is .9 miles from Essenfeld's home.
- The IP address used to log in to the Facebook Victim A "fan" account on September 21, 2023 (PDT) was assigned to a McDonalds, 2254 Otay Lakes Rd., Chula Vista, CA. McDonalds offers public Wi-Fi access that is accessible within its stores and sometimes in the parking lot. This McDonalds is across the street from the Starbucks (2295 Otay Lakes Rd.) and 1 mile from Essenfeld's home.
- Essenfeld would have learned from the discovery how NCIS previously used IP logins from his home and work to connect him to the imposter accounts.

Here are two maps showing the location of the three public Wi-Fi spots in relation to Essenfeld's residence. The first map shows the cluster of addresses vis-à-vis the City of Chula Vista. (The Starbucks and McDonalds are so close that it is hard to distinguish their respective dots. The stores are in the two shopping centers closest to Essenfeld's home.):



*Government's Rule 404(b) Notice*   8   *Case No. 23-cr-0177-RSH*

The second map zooms in to show the locations of Essenfeld's home (724 San Juan Places), the McDonalds (2254 Otay Lakes Rd), the Starbucks (2295 Otay Lakes Rd.), and Cotija Taco Shop (872 Eastlake Parkway):



## IV.

## ESSENFELD'S OTHER CRIMES, WRONGS & ACTS

Pursuant to Rule 404(b), if defendant testifies the United States intends to use in cross-examination evidence of and relating to Essenfeld's creation and operation of the Victim A "fan" accounts and evidence of and relating to Essenfeld using Match.com and Tinder. The evidence and Rule 404(b) nexus are discussed below. Rule 404(b) permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). "Such evidence 'may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.'" *Id.* (quoting *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000)).

The Ninth Circuit has approved the admission of Rule 404(b) evidence in a cyberstalking trial. *United States v. Henderickson*, 2023 WL 5453234, at *1 (9th Cir. Aug.

24, 2023). In particular, the Ninth Circuit held that the district court had properly permitted evidence of the defendant's prior convictions to "show that she knew how to use technology to impersonate another individual and cover her tracks." Although the prior convictions in *Henderickson* were seven and twelve years old, the similarities between the charged conduct and the Rule 404(b) evidence made the evidence sufficiently probative to overcome the defendant's argument that the convictions were too remote in time. *Id.*

The Rule 404(b) evidence noticed herein both pre- and post-dates the charged conduct. For the text messages that Essenfeld sent in the months leading up to the charged conduct, there is an argument that his being contemporaneously on Match.com "was inextricable from and provided necessary context for" the charged conduct and therefore should not be considered "other crimes" under Rule 404(b). *United States v. Williams*, 989 F.2 1061, 1070 (9th Cir. 1993); *see also United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (evidence should not be considered "other act" evidence under Rule 404(b) if "the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined."). Alternatively, *Henderickson* shows that prior conduct of similar and related acts that occurred within months of the charged conduct may be introduced under Rule 404(b).

For the subsequent creation of the "fan" accounts, the Ninth Circuit has Ruled that "our precedent has squarely resolved in the government's favor the issue that subsequent Rule 404(b) evidence may be relevant and admissible." *United States v. Lloyd*, 807 F.3d 1128, 1157 (9th Cir. 2015) (citing *United States v. Bibo–Rodriguez,* 922 F.2d 1398, 1400 (9th Cir.1991)); *see also United States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004) (Rule 404(b) "allow[s] for the introduction of *both* prior *and* subsequent bad acts evidence) (emphasis original). Regardless of whether the proposed Rule 404(b) evidence occurred before or after the charged conduct, the same four-part test applies. *Lloyd*, 807 F.3d at 1157.

//

*Government's Rule 404(b) Notice*     10     Case No. 23-cr-0177-RSH

A. <u>The Victim A "Fan" Accounts</u>

This proposed Rule 404(b) evidence spans a roughly seven-month period between mid-August 2023 and May 2024. The following timeline outlines the proposed Rule 404(b) conduct:[1]

| Date | RULE 404(b) Conduct |
|---|---|
| 8/13/23 | (2023-08-14 00:48 UTC)<br><br>Essenfeld used an IP address assigned to Cotija Taco Shop (872 Eastlake Pkwy, Chula Vista, CA 91913), to register the "▇▇▇▇" Google account that was assigned to youtube.com/▇▇▇ and ▇▇▇gmail.com (hereafter, Google-1). He listed Victim A's date of birth as the account user's date of birth. He also listed the recovery phone number as (858) 308-6205 (T-1), which is assigned to a Samsung Galaxy A03s that receives network access through T-Mobile.<br><br>(2023-08-14 01:49:43 UTC)<br><br>Essenfeld used an IP address assigned to Cotija Taco Shop (872 Eastlake Pkwy, Chula Vista, CA 91913) to register the "▇▇▇" Facebook account (hereafter, FB-1). He used T-1 to set-up FB-1. |
| 8/14/23 | (2023-08-15 00:42:10 UTC)<br><br>Essenfeld used an IP address assigned to Starbucks (2295 Otay Lakes Rd., Chula Vista, CA 91915) to register the "▇▇▇" Instagram Account (hereafter, IG-1). For the current public content of IG-1, see Exhibit C (copy of IG-1, last accessed May 3, 2024). |
| 8/16/23 | (2023-08-16 01:27:26 UTC)<br><br>Essenfeld accessed FB-1. |
| 8/18/23 | (20023-08-18 15:19:35 UTC to 16:17:03 UTC)<br><br>Essenfeld accessed FB-1. He received a mobile short code using T-1 that was consistent with two-factor authentication from Facebook at or about 15:55:58. |
| 8/19/23 | (20023-08-19 22:11:21) |

---

[1] Because the responses from Google, Meta, Wikimedia, T-Mobile, AT&T, and Cox communications are in UTC, the UTC time and date stamp is included to facilitate reference to the original provider returns.

| | | |
|---|---|---|
| 1-4 | | Essenfeld used T-1 to access Google-1. Between mid-August 2023 and mid-September 2023, Essenfeld used Google-1 to publicly comment, "▮▮▮▮ is such a talent" beneath a 2019 video of Victim A that ▮▮▮▮ posted to YouTube in 2021. This comment is the only comment to identify Victim A by her full name and appears intended to connect Victim A publicly to the video. |
| 5-9 | 8/20/23 | (2023-08-20 23:36:43)<br><br>Essenfeld accessed IG-1. During the week of 8/20/23, IG-1 publicly posted the message, "▮▮▮▮ is such a talent! Way to go ▮▮▮▮!" beneath a 2019 video of Victim A that ▮▮▮▮ posted to Instagram in 2021. This comment is the only comment to identify Victim A by her full name and appears intended to connect Victim A publicly to the video. |
| 10-11 | 9/12/23 | (2023-09-12 12:01:22 UTC)<br><br>Essenfeld accessed IG-1 and changed the account profile. |
| 12-28 | 9/21/23 | (2023-09-21 16:21:18 UTC)<br><br>Essenfeld used an IP address assigned to Starbucks (2295 Otay Lakes Rd, Chula Vista, CA 91915) to access IG-1.<br><br>(2023-09-21 16:43 to 18:22 UTC)<br><br>Essenfeld attempted to create a "▮▮▮▮" account on Wikimedia, which owns and operates Wikipedia (hereafter, WM-1). He attempted to post at least four photos to the account. One of the pictures was of Victim A in a military jumpsuit. Two of the photographs were the professional photographs that Victim A previously shared with Essenfeld. The fourth photo was a picture of Victim A that Essenfeld appears to have taken using his cell phone when he attended Victim A's competition.<br><br>Essenfeld's attempts to posts to WM-1 were repeatedly flagged for abuse and deleted for violating Wikimedia's terms of service. The account user, "▮▮▮▮," was ultimately banned indefinitely from Wikimedia. A log of how many times Essenfeld triggered the website's abuse filter is available at: https://commons.wikimedia.org/w/index.php?title=Special:AbuseLog&wpSearchUser=▮▮▮▮ see also Exhibit D (copy of Abuse Log, last accessed May 2, 2024)<br><br>(2023-09-21 18:45 to 19:17)<br><br>After Wikimedia shut down WM-1, Essenfeld, used the alias "▮▮▮▮ to create a ▮▮▮▮ page for ▮▮▮▮" |

| | | |
|---|---|---|
| | | (https█████████████ (WA-1). Unlike Wikimedia, ████████ does not moderate content, flag abuse, or have clear contact information. WA-1 posted seven photos of Victim A along with her full name, date of birth, hometown, and the names of her parents and siblings. WA-1 included links to the videos of Victim A that █████ posted to Instagram and YouTube in 2021. For additional current content, see Exhibit B. |
| | | (2023-09-21 UTC 19:20:35 to 19:27:32)<br><br>Essenfeld used an IP address assigned to McDonalds (2254 Otay Lakes Rd., Chula Vista, CA 91915) to access FB-1 and IG-1. He posted two photos to FB-1 from what appears to be a tablet or laptop that runs Edge 115 on Windows 10. Essenfeld then updated IG-1. It is likely that this update, or the one listed directly below, included posting a link on IG-1 to WA-1. |
| | | (2023-09-21 19:30:39 UTC)<br><br>Essenfeld accessed IG-1 and changed the account profile. |
| | 10/17/23 | (2023-10-17 13:432:31 UTC)<br><br>Essenfeld accessed FB-1. |
| | 10/20/23 | (2023-10-20 02:51:59 UTC)<br><br>Essenfeld accessed FB-1. |
| | 2/28/24 | (2024-02-28 14:19:52 to 14:26:48 UTC)<br><br>Essenfeld accessed IG-1 and changed the profile; accessed FB-1 (likely from the same tablet or laptop he used on 9/21/23); and then accessed IG-1 again. |
| | 3/27/24 | (2024-03-27 00:53:27 UTC and 13:43:09 UTC)<br><br>Essenfeld accessed FB-1. |
| | 5/1/24 | Essenfeld accessed FB-1 or caused FB-1 to be accessed. In particular, he makes it appear that FB-1 has "checked-in" in Colorado near where Victim A lives. |

Essenfeld admits to having created the imposter accounts that are covered by the Superseding Indictment. His defense appears to be fourfold: he did not intend to cause Victim A substantial emotional distress; his conduct does not amount to intimidation or harassment; the First Amendment insulates his conduct from criminal liability; and Victim A did not suffer substantial emotional distress. ECF 37-1, Mot. at 9-11, 13-14, The Rule

404(b) conduct outlined above is relevant evidence regarding his motive, intent, knowledge, and absence of mistake.

### 1. Defendant's Intent to Cause Victim A Substantial Emotional Distress

Defendant asserts that "he had no intent to cause [Victim A] substantial emotional distress." ECF 37-1, Mot. at 14:13-14. Essenfeld's creation and use of the Victim A "fan" accounts between August 2023 and March 2024 is evidence to the contrary. In between the creation of the imposter accounts that are the subject of the Superseding Indictment and the creation of the "fan" accounts, Essenfeld received unredacted discovery subject to the Protective Order. These materials allowed him to review all the interviews with Victim A in which she gave details of how Essenfeld's conduct most affected her and caused her distress.

Armed with this knowledge, after the grand jury returned the Superseding Indictment, Essenfeld created a second Facebook account using Victim A's name that re-posted many of the same photographs he had posted to the original imposter account. Where the imposter accounts sought to demean Victim A in a variety of ways, the "fan" accounts narrowed the focus to the combinations that Essenfeld learned from the discovery most upset Victim A: juxtaposing pictures of Victim A in uniform alongside pictures of her in revealing clothing and publicizing her personal biographical information. Essenfeld always wanted to hurt Victim A. The discovery in this case just helped him learn how to do so more efficiently and make it harder to catch him.

Essenfeld was angry at Victim A in November 2020 when he learned she was on Match.com and he was angry at her in August 2023 when he realized this case was not going away. Both times, Essenfeld responded to that anger by creating social media accounts designed to denigrate, humiliate, and hurt Victim. And both times he intentionally focused his efforts on actions that he had reason to know struck Victim A where she was most vulnerable. In the initial conduct, he purposefully posted the exact kind of photos that Victim A had told him she did not want posted on public social media pages during their relationship. In creating the "fan" accounts, he posted the exact

juxtaposition of pictures that Victim A had said most disturbed her: images or her in revealing clothing alongside images of her in her military uniform. Picking up on her sensitivity about targeting her military service, Essenfeld escalated and posted material questioning the honorable conclusion of her military service. This pattern of targeting Victim A where she has previously expressed vulnerability is persuasive evidence of his motive and intent to cause Victim A emotional distress, and as well as the absence of mistake. This evidence is therefore admissible under Rule 404(b).

   2. <u>Defendant's Extensive Efforts to Conceal His Identity Demonstrate Consciousness of Guilt</u>

After the creation of the original imposter accounts, Essenfeld signed a Military Protective Order that barred him from harassing Victim A or using social media to contact her indirectly, was charged with two federal felonies, and was ordered as a condition of his pre-trial release not to contact Victim A, not to create any social media accounts, and to provide all his electronic devices to Pre-Trial Services for electronic monitoring.

Notwithstanding all the red flags warning him to leave Victim A alone and respect her privacy, Essenfeld doubled down. Just as Essenfeld used information from discovery to refine his efforts to cause emotional distress to Victim A, he used information regarding the investigation to improve his efforts to conceal his identity. The discovery reflects how agents used Essenfeld's telephone number and IP addresses to connect him to the original imposter accounts. As a result, Essenfeld went to extensive efforts not to repeat those mistakes, which speaks to how dedicated Essenfeld was to hurting Victim A and to not getting caught again: He again secured a burner phone but made it harder to trace. This time, he only used public Wi-Fi, where he spent two and half hours—using two different public Wi-Fi connections—trying to create a demeaning Wikipedia page. After repeatedly being flagged for abuse of Wikipedia, he went on to create a ▮▮▮▮▮▮ page.

Essenfeld has a job, children, and hobbies. He had better things to do than spend hours in a Starbucks and McDonalds creating accounts trying to humiliate Victim A. But he was so angry at Victim A—and so determined to avoid being connected with the "fan"

accounts—that this is how he chose to use his time and resources. These extensive efforts to conceal his involvement in the creation of the "fan" accounts is powerful evidence of his consciousness that his conduct was wrong, which belies any possible defense that he did not mean to harass or intimidate Victim A. Essenfeld would not have put all this time and effort into creating the "fan" accounts and concealing his involvement if he truly believed his conduct was innocent or a mere annoyance. His efforts to conceal his identity as the creator of the "fan" accounts show he knew his conduct was harassing—just as he intended it—and he knew he did not want to get caught engaging in such harassing conduct. Therefore, Essenfeld's extensive efforts to conceal his involvement in the "fan" accounts is also evidence of his motive, intent, knowledge, and absence of mistake and admissible under FRE 404(b).

### B. Essenfeld's Own Online Dating Activity

In its motions in limine, the United States discussed potential Rule 404(a)(2)(B) evidence involving Essenfeld's online dating activities between May 2019 and September 2020. ECF 53, Mot. at 6-7. The United States also hereby gives notice of its' intent to use the following conduct pursuant to Rule 404(b):

| Date | RULE 404(b) Conduct |
|---|---|
| May 10, 2019 | Defendant registered for Tinder and received a verification code signaling the activation of his Tinder account. |
| July 17, 2019 | Defendant sent the following message: "Hi Alicia. This is Ted from match. Thanks for sharing your number. I hope you are having a great day." |
| | Defendant sent the following message: "Hi Anne. This is Ted from match. Thanks for sharing your number. I hope you are having a great day." |
| | Defendant sent the following message: "Hi. This is Ted (Theo) from match. I only have a moment but wanted to say hello. I can't have a mobile phone in the building where I work. So just a quick note during lunch then back to my office. Have a great day." |

| October 21, 2019 | Defendant sent the following message: "This is Ted from match. Thanks for sharing your number." |
|---|---|
| December 15, 2019 | Defendant sent the following message: "Hi. This is Ted from Match." |
| February 13, 2020 | Defendant sent the following message: "Hi. This is Ted from match. I just wanted to say hello. Thanks for sharing your number. I look forward to getting to know you." |
| September 10, 2020 | Defendant sent the following message: "Good morning Nikki. This is Ted from match. Thanks for sharing your number." |

Defendant has repeatedly cited Victim A's conduct on Match.com in fall 2020 as a justification and excuse for his conduct. This evidence of defendant engaging in the same type of conduct for which he blamed Victim A is relevant evidence of his opportunity, motive, and absence of mistake. Defendant was himself on Match.com around the time that Victim A re-activated her account. He therefore had the opportunity to learn of her conduct by also being on the platform. Defendant has also repeatedly cited Victim A's Match.com conduct as his motive for committing the crimes charged. Evidence showing that Essenfeld engaged in the same, but arguably worse, conduct provides important context for his motive. It should therefore also be admitted under Rule 404(b).

DATED: May 6, 2024

                Respectfully submitted,

                TARA K. McGRATH
                United States Attorney

                *s/ Sabrina L. Fève*
                SABRINA L. FÈVE
                MICHAEL A. DESHONG
                Assistant United States Attorney