TARA K. MCGRATH
United States Attorney
SABRINA L. FEVE
California Bar No. 226590
MICHAEL A. DESHONG
California Bar No. 301041
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6784/9290
Fax: (619) 546-0631
Email: Sabrina.Feve@usdoj.gov
Email: Michael.Deshong@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THEORDORE E. ESSENFELD,<br><br>Defendant. | Case No.: 23-cr-0177-RSH<br><br>**UNITED STATES' UNREDACTED SUPPLEMENTAL NOTICE OF RULE 404(b) EVIDENCE**<br><br>**(FILED UNDER SEAL)** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Tara K. McGrath, United States Attorney, and Assistant United States Attorneys Sabrina L. Fève and Michael A. Deshong, and hereby files its above-referenced Supplemental Notice of Rule 404(b) Evidence, based on the files and records in this case. As this Supplemental Notice contains victim-sensitive information, a redacted version will be publicly filed and an unredacted version will be filed under seal. The attached exhibits, which cannot be usefully redacted, will only be filed under seal.

//

# I.

# INTRODUCTION

For the sake of economy, this Supplemental Notice incorporates by reference the facts and procedural background information described in the United States' original Notice of Rule 404(b) Evidence (ECF No. 57).

Pursuant to Federal Rule of Evidence 404(b), the United States hereby provides notice of its intent to admit and use on cross-examination evidence of other crimes, wrongs, or acts. In particular, during cross-examination, the United States intends to use additional evidence of and relating to defendant Theodore Essenfeld's creation and use of social media accounts, between August 13, 2023 and May 1, 2024, that purported to be "fan" accounts for Victim A, but which were designed to harass and intimidate her in retaliation for his being charged with cyberstalking and identity theft.

As outlined below, the evidence of who created the Victim A "fan" social media accounts increasingly points to Essenfeld. For example, sealed exhibits submitted with this Supplemental Notice show that Essenfeld maintained a private folder on his personal Facebook account in November 2020 to which he had saved several of the photos now found on the Facebook Victim A "fan" account. Notably, with several of these photos, Essenfeld took the photos and was the only person to Victim A's knowledge to possess them. In other cases, he was one of a trusted few to have the photos, which were never publicly posted to Victim A's knowledge. Additional content on the Facebook Victim A "fan" account is consistent with Essenfeld's prior modus operandi. To wit, subscriber records show that the new disposable phone, like the last one, was registered using a version of Victim A's name as well as her prior address. Similarly, the Facebook Victim A "fan" account, like the imposter Facebook accounts that Essenfeld admits to creating, falsely portrays Victim A as seeking to use Facebook to meet and date other Facebook users.

The evidence pertaining to these accounts has recently been obtained and produced. It arises from an active and ongoing investigation into the "fan" accounts. Investigators

with the Naval Criminal Investigative Service (NCIS) are still awaiting the results of search warrants pertaining to these accounts and drafting a report memorializing a recent interview with Victim A. The United States will expeditiously produce any such records when they are received and reserves the right to supplement this notice with additional disclosures prior to trial.

II.

ADDITIONAL FACTUAL BACKGROUND & INVESTIGATIVE UPDATES

After advising first the U.S. Army's Criminal Investigative Division, and later, NCIS of the imposter Facebook, LinkedIn, and Yahoo accounts that were impersonating her, Victim A provided evidence showing that she had previously told Essenfeld that was concerned about images of her being posted of her online. This evidence included screenshots of their text messages. Some of these screenshots show that, on November 1, 2020, Victim A and Essenfeld exchanged WhatsApp messages about her concern about his posting photos of her online. Two screenshots from that exchange are attached and will be filed under seal. Ex. E. These communications are inextricably intertwined with the charged conduct but provide useful context to the Facebook Victim A "fan" account. Screenshots from the Facebook Victim A "fan" account are attached and will be filed under seal. Ex. F.

The context that the November 2020 text messages provide for Facebook Victim A "fan" account is as follows: In November 2020, Essenfeld was separated but not yet divorced from his now ex-wife. While separated, Essenfeld did not publicly post images of Victim A to his personal Facebook account. He did, however, post images of her to a private Facebook album to which she, along with her mother and sister, had access. On November 1, 2020, Victim A heard from her family that there were photos of her in Essenfeld's Facebook account and she asked him what they were. In his text messages Essenfeld reassured Victim A, "I know [you're a private person]. I wouldn't violate your privacy." He also provided a link to the private album. *See* Ex. E. The screenshot of his message includes thumbnail images from his private Facebook album. At least five of the

1 images in those thumbnails are also posted to the Facebook Victim A "fan" account and several more are from the same events or photo series. Victim A is unaware of these images ever being posted publicly. These materials have been produced to the defense.

On May 13, 2024, NCIS spoke with Victim A regarding the Facebook and Instagram Victim A "fan" accounts. While she did not remember every photo, Victim A was generally familiar with the event or setting where each photo occurred. In many cases, she recalled Essenfeld taking the photo and is unaware of those photos having been posted publicly where anyone other than Essenfeld could have accessed them. She also recalled that Essenfeld posed with her in several of the photos posted to the Facebook "fan" account and appears to have cropped the pictures to remove himself. In one photo, which she remembers he took of her and his sons at the top of Pike's Peak, he has also cropped the image to remove his sons' faces. There is another photo of Victim A, wearing no makeup and a pink shirt, that she sent to Essenfeld, her mother, and her sister to show she was wearing a gift Essenfeld had given her. To her knowledge, nobody ever posted this photo to social media. Similarly, a photo of Victim A holding a "Mr. Fantastic" mug was a selfie that she sent only to Essenfeld and never posted to social media. Victim A has also confirmed that Essenfeld took the photos of her in the sparkly green dress at a military event. She never saw these photos posted to social media and does not have her own copies. Thumbnails of these images were also found on Essenfeld's phone in February 2023. Repeatedly, Essenfeld was the only person, or one of a trusted few, to possess images that are now publicly posted to the Facebook Victim A "fan" account.

While reviewing the Facebook Victim A "fan" account, NCIS also saw that the account has an "About ▮▮▮▮" section. This section has cut and pasted the message that Victim A previously posted to Match.com in October 2020. The text falsely makes it appear that Victim A is looking to date other Facebook users. This pattern of inviting unwanted romantic attention is consistent with the earlier imposter Facebook account that Essenfeld admits to having created, in which he also signed Victim A up for dating services without her knowledge.

Government's Supplemental Rule 404(b) Notice       4       Case No. 23-cr-0177-RSH

1  Another salient detail about the Facebook Victim A "fan" account is that it has liked
2  and "friended" two of the Colorado churches that Victim A attends. Essenfeld has
3  previously acknowledged feeling resentful of Victim A's faith and the role it played in their
4  breakup. For a social media account that has only been accessed from Southern California
5  IP addresses, it cannot be an accident that the only two religious institutions to be liked or
6  friended by the Facebook Victim A "fan" account happen to be those that Victim A attends
7  in Colorado. Victim A is a private person and where she attends church is not information
8  that is generally available.

9  On May 15, 2024, NCIS received subscriber information for the disposable phone
10 that was used to register at least one of the Victim A "fan" accounts. The subscriber
11 information is attached and will be filed under seal. Ex. G. Similar to the burner phone
12 that Essenfeld registered in the charged conduct, this phone is also registered under a
13 version of Victim A's name, "███████." It falsely lists Victim A's prior San Diego
14 residence as the subscriber address. Essenfeld was aware of this prior address and included
15 it in a document he made in November 2020, in which he compiled screenshots of the
16 Match.com conversations he had with Victim A using the aliases "Ed" and "Jerry."

17 The accumulating evidence shows that the images and content posted to the
18 Facebook Victim A "fan" account were images and content to which Essenfeld alone had
19 ready access.

20                                III.
21            ESSENFELD'S OTHER CRIMES, WRONGS & ACTS

22 Pursuant to Rule 404(b), if defendant testifies the United States intends to use in
23 cross-examination evidence of and relating to Essenfeld's creation and operation of the
24 Victim A "fan" accounts. This evidence will pertain to the following crimes, wrongs, and
25 acts:

26   1. Essenfeld cropped and edited photos posted to the Facebook and Instagram
27      Victim A "fan" accounts to remove his face and that of his sons. These actions
28      concealed his involvement in the creation of the accounts.

2. Using the Facebook Victim A "fan" account, Essenfeld falsely made it appear that Victim A was seeking romantic attention from other Facebook users.

3. Essenfeld used Facebook engagement tools to link the Facebook Victim A "fan" account to two of the Colorado churches that Victim A attends. This action increased the likelihood that fellow parishioners would see photos of Victim A that he knew she found embarrassing and inconsistent with her faith.

4. Essenfeld concealed his involvement in the creation of the "fan" social media accounts by registering a prepaid phone on August 13, 2023, using a version of Victim A's name and her prior address.

The United States incorporates by reference the arguments it advanced in its earlier Rule 404(b) Notice. Essenfeld's attempts in 2023 and 2024 to sign Victim A up for unwelcome romantic attention on Facebook and to shame her with her fellow parishioners are consistent with his earlier patterns of engaging in similar conduct and evidence of his intent to cause Victim A substantial emotional distress. His recent efforts to conceal his involvement in the "fan" accounts also demonstrate his consciousness of guilt. These other acts, crimes, and wrongs are therefore admissible under Rule 404(b).

DATED: May 15, 2024

Respectfully submitted,

TARA K. McGRATH
United States Attorney

*s/ Sabrina L. Fève*
SABRINA L. FÈVE
MICHAEL A. DESHONG
Assistant United States Attorney